**ZIMMER–HATFIELD, INC., Plaintiff,**

v.

**Brian WOLF, et al., Defendants.**

**Civ. A. No. 6:93–0537.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Feb. 18, 1994.

Bryan R. Cokeley, Steptoe & Johnson, Charleston, WV, for plaintiff.

John J. Cowan, Charleston, WV, for defendant Wolf.

Lonnie C. Simmons and P. Rodney Jackson, DiTrapano & Jackson, Charleston, WV, for defendants Howmedica France & Kevin France.

*MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending before the Court is the Defendant's motion for summary judgment. The Plaintiff brought this action seeking injunctive and monetary relief for the alleged violation of a restrictive covenant not to compete on the part of the Defendant, a former employee. The Defendant asserts two basic reasons in support of his motion: (1) the Court lacks jurisdiction over this case because the amount in controversy is less than $50,000.00 pursuant to 28 U.S.C. § 1332(a); and (2) the restrictive covenant is unreasonable and overbroad.

## I.

## JURISDICTION

■ The Defendant asserts the record shows the amount in controversy is less than $50,000.00, thus precluding the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a). The leading case from the Fourth Circuit Court of Appeals discussing the determination of the amount in controversy is *McDonald v. Patton*, 240 F.2d 424, 425–26 (4th Cir.1957), which opines:

"It is the firmly established general rule of the federal courts that the Plaintiff's claim is the measure of the amount in controversy and determines the question of jurisdiction; and it is indisputably the law that if the ultimate recovery is for less than the amount claimed, this is immaterial on the question of jurisdiction.... From early days, the broad sweep of the rule has been subject to a qualification namely, that the plaintiff's claim must appear to be made in good faith.... Where it is plain that there is a mere pretense as to the amount in dispute, the amount of the claim will not avail to create jurisdiction, but where the plaintiff makes his claim in obvious good faith, it is sufficient for jurisdictional purposes; and this is so even where it is apparent on the face of the claim that the defendant has a valid defense.... In [*Smithers v. Smith*, 204 U.S. 632, 644, 27 S.Ct. 297, 300, 51 L.Ed. 656 (1907) ], the Supreme Court said, ... that when a plaintiff in good faith asserts a claim in an amount within the jurisdiction of the Court, the Judge is forbidden 'to interpose and try a sufficient part of the controversy between the parties to satisfy himself that the plaintiff ought to recover less than the jurisdictional amount, and to conclude, therefore, that the real controversy between the parties is concerning a subject of less than jurisdictional value.'

"In applying this test, it has been further recognized that while good faith is a salient factor, it alone does not control; for if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction. Such is the doctrine laid down in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586 [590], 82 L.Ed. 845 [ (1938) ]. However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved, for jurisdictional purposes, in favor of the subjective good faith of the plaintiff." (citations omitted).

*See Wiggins v. North American Equitable Life Ins. Co.*, 644 F.2d 1014, 1016–17 (4th Cir.1981); *Cale v. City of Covington*, 586 F.2d 311, 312–13 (4th Cir.1978); *Broglie v. MacKay–Smith*, 541 F.2d 453, 455 (4th Cir. 1976); *Deering Milliken Research Corporation v. Textured Fibres, Inc.*, 415 F.2d 875, 877 (4th Cir.1969); *Gauldin v. Virginia Winn–Dixie, Inc.*, 370 F.2d 167, 170 (4th Cir.1966); *Texas Eastern Transmission Corp. v. Giannaris*, 818 F.Supp. 755, 758 (M.D.Pa.1993); *Arias v. Solis*, 754 F.Supp. 290, 292–93 (E.D.N.Y.1991); *Steele v. Morris*, 608 F.Supp. 274, 276 (S.D.W.Va.1985) (Haden, C.J.); *Patrick v. Sharon Steel Corp.*, 549 F.Supp. 1259, 1261–62 (N.D. W.Va.1982) (Haden, C.J.); *Cf. In re A.H. Robins Co.*, 880 F.2d 709, 723–24 (4th Cir.1989) (unnamed claimants in class action met jurisdictional amount requirement where it could not be said to "a legal certainty" that amount in controversy would be below required amount pursuant to 28 U.S.C. § 1332). *See generally* 1 Moore's Federal Practice ¶ 0.92[1]–[3.–1]. It should also be noted that the damages

claimed must be more than merely "symbolic," because, "a claim not measurable in 'dollars and cents' fails to meet the jurisdictional test of amount in controversy." *McGaw v. Farrow*, 472 F.2d 952, 953 (4th Cir.1973).

In cases where the original jurisdiction of a federal court is invoked, the burden of proof is on the plaintiff to show, "by a preponderance of the evidence, that it is *not* clear to a legal certainty that she will not recover less than the jurisdictional requirement; stated affirmatively, the plaintiff generally is required to show that it is probable that she would recover at least the jurisdictional amount." (emphasis in original). 1 Moore's Federal Practice ¶ 0.92[3.–1] at 844–45. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1144 (1939). Furthermore, it should be noted that the burden imposed on the plaintiff is not a heavy one: "The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits. Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982).

Defendant points to the deposition testimony of Norman Hatfield, owner of the Plaintiff company. Mr. Hatfield testified that he had yet to discern any losses to Zimmer from the Defendant's new employment. He testified there was nothing to indicate that the Defendant had done anything to the detriment of Zimmer, beyond leaving.

Plaintiff suggests that the appropriate standard for determining the amount in controversy in actions involving a covenant not to compete is not simply the amount of "lost sales" incurred, but also "the profits generated by the employee (and therefore the potential loss to be incurred by the employer)[.]"[1] This view finds support in *USAchem, Inc. v. Goldstein*, 512 F.2d 163, 170 (2d Cir.1975)

where it was held, *inter alia*, that the amount of "sales volumes involved," may give rise to "the expectation that damages could exceed the jurisdictional amount." *See Hulsenbusch v. Davidson Rubber Co.*, 344 F.2d 730, 733–34 (8th Cir.1965) (allowing consideration of *potential* loss to plaintiff company in an injunctive proceeding to enforce a restrictive covenant); *American Eutectic Welding Alloys Sales Co. v. Garcia–Rodriguez*, 353 F.Supp. 850, 853 (D.P.R.1973); *Zep Manufacturing Corp. v. Haber*, 202 F.Supp. 847 (D.C.Tex.1962) (amount of defendant's profit for the employer is the determining amount). *Cf. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 125, 36 S.Ct. 30, 31–32, 60 L.Ed. 174 (1915) (value of maintenance and operation of electric power plant is correct jurisdictional valuation, not the cost of removal of defendant's interfering power lines). Other courts have reached similar conclusions based upon the premise that, "[t]he value to the plaintiff of the rights he is seeking to protect is the measure of jurisdiction in equity cases, even though the value of that right may not be capable of exact valuation in money." *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 446 (5th Cir.1971). *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir.1992) ("A complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses." The competitive losses resulted from mass departure of defendants to competitors of plaintiff); *Robert Half Int'l v. Van Steenis*, 784 F.Supp. 1263, 1265 (E.D.Mich.1991).[2]

Plaintiff submits the affidavit of Norman Hatfield asserting that the Defendant earned in excess of $50,000.00 for the Plaintiff in 1992. The loss of those profits due to the employment by the defendant with the Plaintiff's competitor meets the jurisdictional amount in controversy requirement for the

---

1. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgement at 9–10.

2. From the foregoing caselaw it appears that, for the purpose of determining the jurisdictional amount in controversy in a case involving a restrictive covenant not to compete in a summary judgment proceeding, it is proper to consider not only the lost sales of the plaintiff company due to the departure of the defendant employee, but also the amount of profit made by the defendant employee for the plaintiff company prior to his departure to the competitor.

purpose of this motion to dismiss. Whether such loss can be proved on the merits is not the determining factor, *McDonald v. Patton, supra* at 425; the allegations have been made in good faith and clearly the potential loss to the plaintiff is more than symbolic, and is adequate to preserve this Court's jurisdiction at this stage of the proceedings. The Defendant's motion for summary judgment based upon a lack of jurisdiction is therefore denied.

## II.

The standard used to determine whether a motion for summary judgment should be granted or denied was most recently stated by our Court of Appeals as follows:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgement, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2513]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* [498 U.S. 1109] 111 S.Ct. 1018 [112 L.Ed.2d 1100] (1991). The party seeking summary judgement has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2553–2554, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a

triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994).

 It is clear to this Court, when viewing the facts and drawing reasonable inferences in favor of the nonmoving party—the Plaintiff—that genuine issues of material fact exist in this case concerning the validity of the restrictive covenant and the Defendant is not entitled to judgment as a matter of law.[3]

## III.

Based upon the foregoing, the Defendant's motion for summary judgment is **DENIED.** The Clerk is directed to send a copy of this order to counsel of record.

**UNITED STATES of America**

v.

**Drew B. MORVANT, D.D.S. et al.**

**Civ. A. No. 93–3251.**

United States District Court,
E.D. Louisiana.

Jan. 26, 1994.

---

**3.** The Defendant also asserts that there was no consideration given to him for the covenant not to compete. Plaintiff alleges otherwise. Because the facts are in dispute, summary judgment can not be granted on that ground.

Glenn Kenneth Schreiber, U.S. Attys. Office, New Orleans, LA, Sharon N. Perley, U.S. Dept. of Justice, Public Access Section, Civ. Rights Div., Washington, DC, for plaintiff U.S.

Stephen M. Pizzo, William Wesley Shaw, Jr., Blue, Williams & Buckley, Metairie, LA, for defendants Drew B. Morvant, D.D.S. et al.

PATRICK E. CARR, District Judge.

This matter is before the Court on defendant's motion to dismiss for failure to state a claim on which relief can be granted, and motion to strike certain monetary demands from plaintiff's prayer for relief. Determining in its discretion that oral argument is not necessary, the Court **CANCELS** the hearing previously scheduled, and for the reasons that follow, now **DENIES** the motions.

### BACKGROUND

Defendant Dr. Drew Morvant is a dentist who practices dentistry as a professional dental corporation. Dr. Morvant is the owner, president, and sole director of his professional dental corporation.

According to a complaint filed by the Attorney General of the United States, from April 1981 through January 1993, Mr. Ismael Pena sought and received routine dental care

from Dr. Morvant. The complaint alleges that in January of 1993, Dr. Morvant "became aware" that Mr. Pena was HIV positive, and in February of 1993, refused Mr. Pena further dental treatment because he was HIV positive. The complaint further alleges that Mr. Russel Hodgkinson, who is also HIV positive, made an appointment for an initial dental examination and dental cleaning at Dr. Morvant's office in June of 1993, but that he was refused treatment when he arrived for his appointment.

The United States sued Dr. Morvant for violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq. The government charges that Dr. Morvant unlawfully discriminated against the two named individuals and other aggrieved persons who have tested positive for the HIV virus, in violation of title III of the ADA, and that the defendant engaged in a pattern or practice of discrimination within the meaning of the ADA. The complaint asks for declaratory relief, injunctive relief, monetary damages for the two named individuals and other aggrieved persons, and a civil penalty against Dr. Morvant.

## ANALYSIS

The Americans with Disabilities Act (ADA) was enacted by Congress "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities". 42 U.S.C. § 12101(b). The ADA is divided into four subchapters; this lawsuit arises under the provisions and prohibitions contained in subchapter III, Public Accommodations and Services Operated by Private Entities, §§ 12181–12189.

The ADA prohibits discrimination by public accommodations as follows:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Included in the definition of "public accommodation" in that subchapter is "professional office of a health care provider". 42 U.S.C. § 12181(7). A "private entity" means "any entity other than a public entity...." 42 U.S.C. § 12181(6). The Department of Justice regulations promulgated to implement the ADA specifically include an individual with HIV disease (whether symptomatic or asymptomatic) as an individual with a disability under the ADA. 28 C.F.R. § 36.104.

### 1. MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

■ Defendant argues that because he practiced dentistry as a professional dental corporation, he is not subject to individual liability, and cannot be sued personally. He is mistaken.

The ADA prohibits discrimination of the basis of disability by any "person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Dr. Morvant's professional dental corporation operates a place of public accommodation as defined by the Act. Dr. Morvant, as the owner, president, and sole director of his professional dental corporation, owns and operates his dental practice. Dr. Morvant personally falls within the broad sweep of the ADA.

In first case to consider this issue under the ADA, the defendant, like Dr. Morvant, was the sole shareholder of the corporation that was alleged to have engaged in discriminatory practices, and was the person responsible for making the discriminatory decision on behalf of the employer corporation. *EEOC v. AIC Security Investigations, Ltd.*, 1993 WL 427454 (N.D.Ill. Oct. 21, 1993). After a comprehensive analysis of the issue, that court concluded that the remedial purposes of the ADA would be subverted if those persons most responsible for discriminatory acts and policies were shielded from personal liability by a corporate entity. *Id.* at *9.

In *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir.1991), (citations omitted) a black couple sued a real estate corporation and its owner and corporate officer in his individual as well as corporate capacity, for violations of federal civil rights

statutes. The Fifth Circuit held that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable. *Id.* at 1312 (citing *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 173 (5th Cir.1985)). The Court noted that if the jury found the individual corporate officers directly participated in discrimination or authorized discrimination, they may be held personally liable. *Id.* If both the individual and the corporation may be liable, it is irrelevant if either or both parties are sued.

## 2. DEFENDANT'S MOTION TO STRIKE

Defendant moved to strike the government's demand for monetary damages for Ismael Pena because Mr. Pena is deceased, and for "other aggrieved persons" because the complaint does not identify those individuals, or allege any discriminatory acts against those individuals.

### A. Mr. Pena

The government's complaint requests compensatory damages to Mr. Pena, a person allegedly injured by defendant's discriminatory conduct. The ADA authorizes the Attorney General to seek monetary damages on behalf of any person aggrieved by a defendant's discriminatory conduct. 42 U.S.C. § 12188(b)(2)(B).

■ When a federal civil rights statute is silent as to whether the government may seek damages on behalf of an aggrieved person who has died prior to the commencement of the civil action, 42 U.S.C. § 1988 directs the court to apply the law of the forum state. Section 1988 uses sweeping language, and was designed to remedy the deficiencies and effectuate the underlying purposes of federal civil rights statutes. *Brazier v. Cherry,* 293 F.2d 401, 408 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).

In *Robertson v. Wegmann,* 436 U.S. 584, 589, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978), the Court held that since 42 U.S.C. § 1983 was silent as to the issue of surviva-

bility, 42 U.S.C. § 1988 required the district court to apply the Louisiana survivorship law. *Id.* at 588, 98 S.Ct. at 1994. In that case, the Supreme Court affirmed the district court's dismissal of a Section 1983 claim when the plaintiff died before trial leaving no survivors as listed in the applicable Louisiana statute.

In *Overpeck v. Christ Episcopal Church,* 577 So.2d 364 (La. 1 Ct.App.1991), *writ denied,* 580 So.2d 925 (La.1991) the court found that discrimination against a person with AIDS is an "offense or quasi-offense" within the meaning of La.Civil Code Art. 2315.1, and the survivorship statute applied. This case interpreted the Louisiana anti-discrimination statute. The Fifth Circuit has stated that because a federal civil rights action arises from the defendant's violation of a duty imposed by federal law, that action should be characterized "as one sounding in tort—i.e., an 'offense or quasi-offense.'" *Page v. U.S. Industries, Inc.,* 556 F.2d 346, 352 (5th Cir.1977).

■ Louisiana Civil Code Art. 2315.1 provides that the right to recover damages for injuries caused by an offense or quasi-offense suffered by a person who dies survives for one year from the death of the deceased, in favor of the deceased survivors. Here, the government is in the position of seeking damages on behalf of Mr. Pena, therefore, on behalf of his succession survivors.

### B. "Other aggrieved persons"

■ The defendant argues that the government's request for monetary damages for "other persons aggrieved" does not comport with the pleading requirements of FRCP 8(a), because he is unable to fashion a defense against a damage claim for unknown individuals allegedly injured by unspecified discriminatory acts. In essence, he claims he does not have "fair notice" of the claim and the grounds upon which it rests.

■ The complaint alleges that the defendant engaged in a "pattern or practice" of discrimination in violation of the ADA. 42 U.S.C. §§ 12188(b)(1)(B)(i) and (b)(2)(B).[1]

---

In a civil action under [the preceding paragraph], the court ... may award such other relief as the court considers to be appropriate, including monetary damages to persons aggrieved when requested by the Attorney General....