**MAILWAUKEE MAILING, SHIPMENT AND EQUIPMENT, INC., Plaintiff,**

v.

**NEOPOST, INC., Defendant.**

**No. 03–C–0240.**

United States District Court, E.D. Wisconsin.

April 24, 2003.

---

Michael Bowen, Milwaukee, WI, Robert Goldberg, Chicago, IL, for Plaintiff.

Audrey A. Gee, Walnut Creek, CA, Daniel W. Hildebrand, David Meany, Madison, WI, Joshua Cohen, Walnut Creek, CA, Richard Blair, Robert Shumaker, Madison, WI, Scott Lascari, Chicago, IL, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff MAILwaukee Mailing, Shipment and Equipment, Inc., a Wisconsin corporation, sues defendant Neopost, Inc., a Delaware corporation with its principal place of business in California. Plaintiff, a seller of mailing equipment, shipping systems, supplies and related products distributed by defendant, alleges that defendant breached its dealership agreement with plaintiff and violated the Wisconsin Fair Dealership Law, Wis. Stat. ch. 135. Plaintiff commenced the action in state court on February 17, 2003, and defendant timely removed the case to this court alleging diversity of citizenship and an amount in controversy of more than $75,000. Plaintiff now moves to remand the case to state court.

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that pursuant to its dealership agreement with defendant it had the exclusive right to sell defendant's products in the Milwaukee area. According to plaintiff, in March 2002 defendant's parent corporation purchased Hasler, Inc., a competitor of defendant's, and soon after Hasler began offering defendant's products to its own dealers. Plaintiff further alleges that on January 21, 2003, Hasler bought Engelberth Mailing Systems, which had been its Milwaukee area dealer, and Hasler then commenced selling defendant's products directly. Thus, plaintiff alleges, defendant violated its contractual obligation to plaintiff and its duty under the Fair Dealership Law. Plaintiff alleges that it has been damaged in the amount of $49,375 and also requests a permanent injunction and reasonable attorneys' fees and costs.

### II. DISCUSSION

#### A. Applicable Law

##### 1. Principles Governing Removal Jurisdiction

■ A state court defendant may remove an action to federal court if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). However, the removal statute is strictly construed against removal, and all doubt is resolved in favor of the states. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *see also Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.*, 70 F.Supp.2d 888, 892 (E.D.Wis. 1999). A federal court has original jurisdiction over cases raising questions of federal law or where the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a)(1). The burden of showing that federal jurisdiction exists falls on the party seeking a federal forum. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997). Thus, in a removal case, the defendant bears the burden. *Id.*

■ In a removal action based on diversity jurisdiction, the amount in controversy claimed by the plaintiff in the complaint is deemed to have been made in good faith and presumed to be determinative of the jurisdictional amount. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938)); *Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992). Thus, where the plaintiff alleges that it seeks relief valued at more than $75,000, the defendant can satisfy its

burden by merely pointing to this allegation in the complaint, so long as the allegation presents a colorable claim. *Ross v. Inter–Ocean Ins. Co.,* 693 F.2d 659, 663 (7th Cir.1982), *overruled on other grounds by Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955 (7th Cir.1998); 14C Charles Alan Wright, et al., *Federal Practice and Procedure* § 3725 (3d ed.1998). However, where the complaint asks for less than $75,000 in damages or does not allege the value of the relief sought, the defendant must offer "competent proof," *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 179, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), establishing " 'to a reasonable probability' " that the amount in controversy exceeds $75,000, *Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993) (quoting *Shaw,* 994 F.2d at 366). In other words, the defendant must prove that the court has jurisdiction "by a preponderance of evidence." *Shaw,* 994 F.2d at 366 & 366–67 n. 2 (citing *McNutt,* 298 U.S. at 189, 56 S.Ct. 780).

In the present case, it is undisputed that the parties are diverse. However, plaintiff contends that defendant has not shown that the amount in controversy exceeds $75,000. The parties agree that the amount in controversy is at least equal to the amount of damages claimed by plaintiff—$49,375. Therefore, to sustain its burden, defendant must show that it is reasonably probable that the additional relief requested by plaintiff exceeds $25,625 in value ($75,000—$49,375). Such additional relief includes an injunction barring defendant from making "substantial changes in the competitive circumstances of [its] dealership and dealership agreement without good cause or upon improper or otherwise inadequate notice" (R. 1 Ex. A ¶ 22(a)), and reasonable attorneys fees. I address only the value of the injunction because I conclude that it is dispositive.

## 2. Determining the Value of Injunctive Relief

When a plaintiff seeks injunctive relief, the value of such relief for purposes of determining the amount in controversy is "the pecuniary result to either party which the judgment would directly produce." *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 393 (7th Cir.1979); *accord In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609–10 (7th Cir. 1997).

The value of an injunction to a plaintiff equals the economic value of the rights the plaintiff seeks to protect and/or the potential injury it seeks to prevent. *See McCarty,* 595 F.2d at 393; 14B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3708 (3d ed.1998). This value can be determined by anticipating the future financial benefits to the plaintiff from the injunction or the harms to the plaintiff if the challenged conduct is allowed to occur or continue. *E.g., Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 348, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (relying on evidence of plaintiffs' anticipated, future lost earnings and costs of complying with regulation the enforcement of which plaintiff sought to enjoin); *In re Brand Name Prescription Drugs,* 123 F.3d at 609 (stating that court could rely on "the present value of the [anticipated] future cost savings" to plaintiffs that would result if the court enjoined the defendants' alleged price-fixing).

The value of an injunction may not be capable of precise determination, but precision is not required. *Hedberg v. State Farm Mut. Auto. Ins. Co.,* 350 F.2d 924, 929 (8th Cir.1965) ("[A]lthough injury in an injunction suit may not be capable of exact valuation in money, this fact of itself does not negative federal jurisdiction."); 14B Wright, *supra,* § 3708; *see Miller–*

*Bradford & Risberg, Inc. v. FMC Corp.,* 414 F.Supp. 1147, 1149 (E.D.Wis.1976).[1]

To determine a plaintiff's anticipated pecuniary harm if injunctive relief is denied, courts have extrapolated based on evidence of the plaintiff's past financial circumstances. For example, "in a suit brought by an employer against a former employee to enforce a covenant not to compete, the court usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." 14B Wright, *supra,* § 3708 (citing *Premier Indus. Corp. v. Tex. Indus. Fastener Co.,* 450 F.2d 444, 446–47 (5th Cir.1971); *Hedberg,* 350 F.2d at 930; *Zimmer–Hatfield, Inc. v. Wolf,* 843 F.Supp. 1089, 1091 (S.D.W.Va.1994); *Zep Mfg. Corp. v. Haber,* 202 F.Supp. 847, 848–49 (S.D.Tex.1962)); *see also Basicomputer Corp. v. Scott,* 973 F.2d 507, 510 (6th Cir. 1992); *Robert Half Int'l, Inc. v. Van Steenis,* 784 F.Supp. 1263, 1265–66 (E.D.Mich.1991); *Work v. U.S. Trade, Inc.,* 747 F.Supp. 1184, 1186 n. 2 (E.D.Va.1990).

In the absence of unusual circumstances, it is reasonable to infer that if an employer earned a certain amount of profit from an employee's work in one year, the employer will lose an equivalent amount in the following year if the employee works for a competitor. Thus, the amount of such profit may be used to assess the value of an injunction for purposes of determining the amount in controversy. *See, e.g., Zimmer–Hatfield,* 843 F.Supp. at 1091–92 (valuing injunction based on an affidavit showing past profit); *Robert Half Int'l,* 784 F.Supp. at 1265 (holding that affidavits and testimony showing past profit constituted reliable proof of the value of an injunction); *see also* 14B Wright, *supra,* § 3708.[2]

**B. Application of Law to Facts of Present Case**

To prove that the injunction plaintiff seeks is worth more than $25,625, defendant extrapolates plaintiff's anticipated future loss from the damages plaintiff alleges that it has already incurred. Plaintiff alleges in its complaint that it has suffered $49,375 in damages. The period in which such damages were incurred commenced either in March 2002, when defendant's parent corporation bought Hasler, or in January 2003, when defendant's parent corporation began directly selling defendant's products, and ended on February 17, 2003, when plaintiff filed the complaint. Defendant argues that it is reasonable to infer that plaintiff will suffer future loss at

1. When determining the value of anticipated gains or losses, the question arises as to how far into the future should the court look? In *Hunt,* the Supreme Court stated that the plaintiffs met the amount in controversy because their anticipated future lost earnings and compliance costs would likely reach the jurisdictional minimum "over time." 432 U.S. at 348, 97 S.Ct. 2434. Cases in the Seventh Circuit have likewise approved the assessment of future profits or losses. *In re Brand Name Prescription Drugs,* 123 F.3d at 609 (collecting cases). I have found no case setting a time limit beyond which profits or losses cannot be considered. *See Buckeye Recyclers v. CHEP USA,* 228 F.Supp.2d 818, 827 (S.D.Ohio 2002) (noting "the lack of any de-finitive sentiment in the cases as to how much 'time' is 'too much time' "). However, I need not address the issue in the present case because I conclude that it will take a relatively short amount of time for the benefits of the injunction to reach the jurisdictional amount.

2. This principle also finds support in the Wisconsin Fair Dealership Law under which future damages may be awarded as an alternate remedy to a permanent injunction. *See* Michael A. Bowen & Brian E. Butler, *The Wisconsin Fair Dealership Law* § 12.2 (2d ed.2001). The amount of such damages is determined, in part, on a plaintiff's past performance. *Id.* § 12.7.

a rate comparable to that at which it lost the $49,375.

Whether plaintiff began to suffer damages in March 2002 or in January 2003, if it incurs loss in the future at a rate comparable to that in the past, its future loss will exceed $25,625 within a short period of time. If plaintiff's damages began to accrue in March 2002, its average monthly loss was $4,114.58 ($49,375 / 11 months from March 2002 to February 2003), and at that rate its future loss will exceed $25,625 within six months ($4,114.58 × 6 months = $26,931.78). If plaintiff's damages began to accrue on January 21, 2003, its average daily loss was $1,828.70 ($49,375 / 27 days from January 21, 2003 to February 17, 2003), at which rate it had already lost approximately $102,407 more by April 14, 2003 when defendant filed its brief in opposition to plaintiff's motion to remand. In either case, the value of an injunction protecting plaintiff against future loss would exceed $25,625.

I conclude that the above-described method of estimating the value of the injunction is reasonable, and that defendant has satisfied its burden of showing that the injunction is worth more than $25,625. I am required to accept as true plaintiff's uncontested allegation that at the time of filing its complaint it had lost $49,375. Further, I can infer from the fact that plaintiff sought injunctive relief that in the absence of such relief it will suffer loss in the future. Why else would a plaintiff request an injunction? Finally, it is reasonable to infer that plaintiff will suffer loss in the future at a rate comparable to that at which it has already incurred damages. As previously discussed, in estimating future loss in covenant not to compete cases that involve an inquiry similar to that required in the present case, courts measure an employer's future loss based on the employee's past performance. *E.g.,* *Zimmer–Hatfield,* 843 F.Supp. at 1091.

Plaintiff offers no evidence that the injunction is worth less than $25,625 but simply argues that defendant has not met its burden. However, I find its arguments unpersuasive. First, plaintiff argues that defendant's estimate is speculative. However, estimating future loss will almost always involve an element of speculation. The presence of such an element is not a bar to finding federal jurisdiction. *See* 14B Wright, *supra,* § 3708 (collecting cases). The question is not whether the estimate is speculative, but whether the speculation is reasonable based on the evidence. In the present case, defendant's estimate of future loss is based on undisputed facts and on reasonable inferences from such facts. *Cf. Consol. Doors, Inc. v. Mid–Am. Door Co.,* 120 F.Supp.2d 759, 763 (E.D.Wis.2000) (finding no jurisdiction where defendant failed to explain its reasoning in valuing an injunction).

Plaintiff also argues that "nothing in the complaint, the notice of removal, or Neopost's latest submission supports the bizarre notion that measurable monetary damages are accumulating at some neatly metronomic daily or monthly rate." (Pl.'s Reply Br. at 2.) However, the reasonableness of defendant's estimate of plaintiff's future loss does not depend on whether plaintiff's previous damages were incurred at an even rate or sporadically. In either case, it is reasonable to infer that plaintiff's future loss over a specific period of time will be roughly equivalent to its past loss over a comparable period, given that there is no evidence that circumstances have changed.

Plaintiff also argues that the record contains no basis for inferring that it "has continued or will continue to lose identifiable sales and resulting profits to the extent that it did up to the filing of the complaint." (*Id.*) However, it can be inferred from plaintiff's having sought in-

junctive relief that in the absence of such relief it will suffer harm in the future, and, as discussed, it is reasonable to infer that plaintiff will suffer losses at a comparable rate as in the past. Further, even if the rate at which plaintiff incurred loss in the future declined by fifty percent from the past rate, such future loss would still exceed $25,625 in a relatively short time.

Finally, plaintiff argues that defendant's estimate fails to account for plaintiff's duty to mitigate its damages. However, plaintiff does not argue that it has or will mitigate its damages or offer evidence of any amount of mitigation. Plaintiff cites *Bush v. Roadway Express, Inc.*, 152 F.Supp.2d 1123, 1126 (S.D.Ind.2001), where the court remanded an action because the plaintiff's mitigation efforts reduced the amount in controversy to less the jurisdictional minimum. However, in *Bush*, unlike the present case, the record contained evidence of mitigation. In the absence of additional detail, the mere fact that plaintiff has a duty to mitigate damages is not a basis for reducing an otherwise reasonable estimate of future loss.

Thus, it is reasonably probable that, in the absence of an injunction, plaintiff's future loss as a result of defendant's challenged conduct will exceed $25,625. Thus, the value of the injunction requested by plaintiff exceeds $25,625. In combination with the $49,375 in past damages, the amount in controversy exceeds $75,000.

### III. CONCLUSION

Based on the foregoing analysis I find that the amount in controversy exceeds $75,000 and that this court therefore has subject matter jurisdiction.

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's motion to remand is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to file a surreply brief is **DENIED.**

**FINALLY, IT IS ORDERED** that the court shall hold a telephonic status conference with the parties on **May 7, 2003** at **10:30 a.m.** The court will initiate the call.