Robert VAN BUSKIRK, M.D.L.,1257, in re Cable News Network, Plaintiff–Appellant,

v.

CABLE NEWS NETWORK, INC., Time Inc., and Time Warner Inc., Defendant–Appellee.

No. 00–16616.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 5, 2001.

Submitted March 20, 2002.

Filed March 20, 2002.

Charles E. Lyons, Charlotte, NC, and Bruce J. Robbins and Elihu H. Berman (argued), Clearwater, FL, for the appellant.

Kevin T. Baine, Nicole K. Seligman, Thomas G. Hentoff, Mary–Rose Papandrea, and Paul Gaffney (argued), Washington, DC, for the appellee.

Before BRIGHT,* B. FLETCHER, and FISHER, Circuit Judges.

## OPINION

BRIGHT, Circuit Judge.

Appellant Robert Van Buskirk brought an action for defamation against Appellees, Cable News Network (CNN), Time Inc., and Time Warner Inc., based upon a series of television and magazine reports stemming from Operation Tailwind, a 1970 United States military operation conducted in Laos. The district court dismissed the action with prejudice for failure to state a claim upon which relief can be granted. We AFFIRM the district court in part and REVERSE and REMAND in part.

### I. Facts and Procedural Background

Robert Van Buskirk filed his initial complaint alleging defamation in the United States District Court for the Western District of North Carolina in June of 1999.

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

The Judicial Panel on Multidistrict Litigation transferred the case to the Northern District of California and consolidated it with six other libel cases based on the Tailwind reports. Appellees, CNN, Time Inc., and Time Warner Inc., filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. On March 20, 2000, the district court granted Appellees' motion, but allowed Van Buskirk leave to amend his complaint "in order to ensure that [Van Buskirk] has every opportunity to present a viable claim before the Court reaches any decision as to final dismissal of his action." Van Buskirk filed his Second Amended Complaint on May 30, 2000. After a hearing on the matter, the district court again granted Appellees' motion to dismiss, this time with prejudice and without leave to amend.

Van Buskirk's defamation claims stem from news reports broadcast by CNN and by an article published in Time Magazine. Both CNN and Time reported that the United States military used sarin nerve gas during Operation Tailwind, the purpose of the operation was to kill American defectors, and women and children were killed during the operation. Van Buskirk also complains that he was defamed by a subsequent retraction of the reports on CNN that described him as a "primary source" who gave inconsistent statements to CNN and took medication for a nervous disorder.

Specifically, on June 7, 1998, CNN aired its first broadcast of *NewsStand: CNN &*

*Time,* a television news program, featuring the first of a two-part series concerning Operation Tailwind. Time Magazine published an article reporting virtually the same story.[1] On June 14, CNN broadcast a follow-up report setting forth opposing views regarding the type of gas that was used in the operation.[2]

Prior to the broadcast, CNN repeatedly interviewed Van Buskirk. CNN recorded six or seven hours of video and audio tape concerning Van Buskirk's participation in Operation Tailwind as a lieutenant in the United States Army Special Forces. Van Buskirk's words and image from those interviews appeared throughout the challenged reports.

After the broadcast of the Tailwind reports, CNN retained a First Amendment attorney, Floyd Abrams, of New York, to conduct a review of the factual basis for the reports. On July 2, 1998, CNN published a report (the "Abrams report") which concluded that CNN should retract the story because the record established insufficient credible evidence to support the story's claims. The same day, CNN retracted its broadcast and apologized. On July 5, CNN broadcast an additional report discussing at length both the Abrams report and the decision to retract.

In this report, featured on the CNN program *Talkback Live,* a CNN correspondent stated that Van Buskirk "wrote a book about the incident which never mentioned nerve gas nor defectors, that his statements in different interviews with

1. The Time article was published in the June 15 issue, which appeared on newsstands on June 8, 1998. The article was entitled, "Did the U.S. Drop Nerve Gas?" and it carried bylines of the producer and correspondent on the initial CNN broadcast and was similar in content.

2. This broadcast concerned the statements of senior military officials at the time of Opera-

tion Tailwind who asserted that tear gas, not nerve gas, was used during the operation. The broadcast also reported that the Secretary of Defense had opened an investigation into the matter. Van Buskirk was not named or quoted in this broadcast, but his picture, in a 28-year-old snapshot, appeared briefly on screen, once at the beginning of the broadcast and once toward the end.

CNN were inconsistent, and that his own knowledge of what sort of gas was used was limited." The correspondent also reported that Van Buskirk "said he had been taking drugs for a nervous disorder for ten years though he finally stopped." Similar statements were made on a follow-up segment on *NewsStand,* later that day. In an interview for the segment, Floyd Abrams mentioned Van Buskirk: "And worst of all, worst of everything, he didn't know what he was talking about. He's not a guy who would know if it was nerve gas or sleeping gas or tear gas. He was on the ground." Defendant's Motion to Dismiss Ex. 5 at 4.

After Van Buskirk filed his Second Amended Complaint, the district court again considered CNN's motion to dismiss. The district court, without objection, concluded that it could properly consider the complete interview transcripts and tapes under the incorporation by reference doctrine.[3] The court then dismissed the complaint with prejudice and denied leave to amend. Van Buskirk appeals this order.

## II. Standard of Review

■ The district court granted defendants' motion to dismiss under Rule 12(b)(6). Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss. In this case, the district court relied on the doctrine of "incorporation by reference" to consider documents that were referenced extensively in the complaint and were accepted by all parties as authentic. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.1999). Under the "incorporation by reference" rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.

■ We review *de novo* the district court's dismissal of complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 983. "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rabang v. INS,* 35 F.3d 1449, 1451 (9th Cir. 1994) (citing *Buckey v. County of Los Angeles,* 968 F.2d 791, 793–94 (9th Cir.1992)).

## III. Discussion

### A. Original Broadcasts

After reviewing the CNN interviews with Van Buskirk as a whole, the district court concluded as a matter of law that Van Buskirk could not maintain a defamation action based upon the reported use of deadly nerve gas or the targeting of American defectors because such reports were consistent with Van Buskirk's own version of events as told to Appellees. The district court did acknowledge that the reports contained some "contextual discrepancies," but ultimately decided that a defamation claim could not stand where a report was entirely consistent with the plaintiff's version of events. Additionally, the court found no authority for "the proposition that publication of statements obtained during repetitive, suggestive or even brutal interviews gives rise to a claim for defamation."

■ Van Buskirk argues that the district court erred on several grounds. First, Van Buskirk maintains that Appellees relied on coercive interview tactics, such as repeatedly "interrogating" him, to elicit statements from him. In the same vein, Van Buskirk claims Appellees "planted in his mind the belief that the true mission might have been to kill American defectors." Second, Van Buskirk alleges

**3.** Neither party challenges this decision to review the complete transcripts and tapes.

that Appellees took excerpts from the hours of "repetitive suggestive questioning" out of context in order to support its dual premises about the use of sarin gas and the killing of American defectors.[4] Finally, Van Buskirk argues that CNN reported that women and children had been killed by members of Operation Tailwind when truthful information provided by Van Buskirk indicated that he had no personal knowledge of any such killings.

Van Buskirk cites only one case in support of these arguments, *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55, 60 (1938), which held that a court should determine how ordinary people would naturally understand the publication in deciding whether or not it is libelous.[5] In his briefs to this court, Van Buskirk does not attempt to refute the district court's legal conclusion that reports consistent with a plaintiff's own version of events cannot be found to defame that individual.

In reviewing the district court's conclusions, we note that the court cited *Brown v. Boney*, 41 N.C.App. 636, 255 S.E.2d 784, 791 (1979) (holding that under North Carolina law an admission of the truth of the statement is a complete defense to a defamation claim), in support of its conclusion that Van Buskirk cannot maintain a defamation action because Appellees' reports were consistent with Van Buskirk's own version of events as told to Appellees. Significantly, *Brown* stands for the proposition that truth is a defense to defamation, not that a paraphrasing of plaintiff's own words by a defendant does not amount to defamation. Without explicitly saying so, the district court in this case extended North Carolina's "truth" defense to include

an "own words" defense. Other courts have recognized the logical extension of the "truth" defense to include an "own words" defense. *See Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir.1993) ("[A] party's accurate quoting of another's statement cannot defame the speaker's reputation since the speaker is himself responsible for whatever harm the words might cause. . . . The fact that a statement is true, or in this case accurately quoted, is an absolute defense to a defamation action."); *see also Johnson v. Overnite Transp. Co.*, 19 F.3d 392, 393 n. 1 (8th Cir.1994) (recognizing the "general rule that a defamation claim arises only from a communication by someone other than the person defamed"); *Smith v. School Dist. of Philadelphia*, 112 F.Supp.2d 417, 429 (E.D.Pa.2000) (noting that "[g]enerally, a plaintiff can not be defamed by the use of his own words").

We will apply the "own words" defense in this context. The parties do not cite to any authority indicating that the North Carolina Supreme Court has expressly rejected or accepted the "own words" defense. Nor can we find any authority on point. Nonetheless, that defense is widely accepted and consistent with North Carolina's recognition of the related truth defense. We will, therefore, presume that North Carolina law incorporates such a defense and apply it here.

As the district court determined, Van Buskirk admitted the truth of each of the three facts he now challenges. Van Buskirk admits that he said, "My personal opinion is probably Tailwind was about killing defectors." With regard to the use of sarin gas, Van Buskirk did refer to the gas as "lethal gas," "poison gas," "sleep

---

**4.** Van Buskirk is most concerned with what he believes to be CNN's use of his statements in such a manner that it appeared he was endorsing CNN's story line. He points to the juxtaposition of his statements and those of

the CNN correspondents for support of this theory. *See* Appellant's Reply Br. at 2–3.

**5.** There is no dispute that North Carolina law governs this case.

gas," and in his opinion, as probably a "nerve agent." Van Buskirk also made the statement, "we were specifically ordered in Tailwind to kill anything that moved" and other similar statements that indicated non-combatants were killed.

■ As the district court noted, even though some "contextual discrepancies" exist between Van Buskirk's own words and Appellees' quotation of those words, we follow the Supreme Court's teaching that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge can be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (internal quotation marks omitted). The minor inaccuracies that Van Buskirk attempts to show do not affect the "gist" of the statements quoted by Appellees.

Furthermore, we reject Van Buskirk's argument that Appellees coerced him into adopting a certain version of events. The journalist's right to use aggressive and abrasive tactics in an attempt to ferret out information from reluctant individuals is well established. *See, e.g., Desnick v. ABC*, 44 F.3d 1345, 1355 (7th Cir.1995) (explaining that if the broadcast itself does not contain actionable defamation, the "target has no legal remedy even if the investigatory tactics used by the network are surreptitious, confrontational, unscrupulous, and ungentlemanly").

## B. Retraction Broadcast

The district court also dismissed Van Buskirk's additional claims after determining the following statements did not constitute an adequate basis for a defamation claim: (1) Van Buskirk was the "primary

source" for the Tailwind reports; (2) Van Buskirk gave statements to CNN that were inconsistent with his previously published book, which made no mention of nerve gas or killing defectors; and (3) Van Buskirk had been on medication for a nervous disorder. The court concluded that describing Van Buskirk as a primary source was not defamatory and Van Buskirk had not denied the fact that he did not mention nerve gas or killing defectors in his book or that he had taken medication for a nervous disorder.

The retraction of the Tailwind story was broadcast on two separate programs: (1) on *CNN Talkback Live* on July 2, 1998; and (2) on *NewsStand: CNN & Time* on July 5, 1998. On the *Talkback Live* program, a CNN correspondent made the following remarks about Van Buskirk:

> But the Abrams report[6] notes, as the CNN broadcast did not, that Van Buskirk wrote a book about the incident which never mentioned nerve gas nor defectors, that his statements in different interviews with CNN were inconsistent, and that his own knowledge of what sort of gas was used was limited. And he said he had been taking drugs for a nervous disorder for ten years though he finally stopped.

Defendant's Motion to Dismiss Ex. 4 at 3. On the July 5 *NewsStand* program the same correspondent said:

> CNN's primary source on the ground in Operation Tailwind was Robert Van Buskirk, the lieutenant who was second in command. He talked about nerve gas.
>
> . . . .
>
> But in his 1983 book about Tailwind, Van Buskirk mentioned neither nerve

---

6. The Abrams report refers to the independent verification report prepared by Floyd   Abrams which led to the story's retraction.

gas nor defectors. And in talking to CNN, he said he had been taking medication for a nervous disorder for ten years, though he finally stopped.

Defendant's Motion to Dismiss Ex. 5 at 4. Later Floyd Abrams stated:

And worst of all, worst of everything, he didn't know what he was talking about. He's not a guy who would know if it was nerve gas or sleeping gas or tear gas. He was on the ground.

*Id.* And later in the program the correspondent stated:

It was Van Buskirk who talked about first seeing, then killing defectors, and described one he saw.

. . . .

But he didn't mention that in his book, either. And in his first conversation with CNN producer April Oliver, he mentioned killing a Russian, not an American.

*Id.* at 4.

■ Van Buskirk argues that being labeled as the primary source is defamatory because it shifts the blame from CNN to Van Buskirk; in essence, CNN made Van Buskirk into the "fall guy." Viewing the facts in the light most favorable to Van Buskirk, his status as a primary source is indisputable. Van Buskirk gave many hours of interviews to CNN and adopted, albeit reluctantly, each of the major points of CNN's story. Additionally, Van Buskirk admits that he was the most featured source in his brief to this court, "He was the one most frequently seen during the broadcasts, his face and voice having been seen and heard some nineteen times, almost more than the faces and voices of all the other participants together." (Appellant's Br. at 30–31). Similarly, CNN's report about the inconsistency of Van Buskirk's interview statements and the inconsistencies between his statements

and what he wrote in his book cannot be actionable defamation because these statements are conceded as true by Van Buskirk.

■ Turning to the remaining retraction statement, Van Buskirk contends that it was defamatory of CNN to not disclose that the medication he had been taking was not mind-altering and he had stopped taking it more than ten years before the date of the broadcasts. He argues that a reasonable trier of fact could find that CNN's statements indicated that Van Buskirk was mentally unbalanced and, by implication, unreliable.

In his interviews with CNN, Van Buskirk admitted that he had taken medication for a nervous disorder:

Question: Do you have any physical maladies today that you can tie to this gas that you got exposed to?

[Answer]: I really you know, I really don't know. I the VA gave me a physical, and they've rated me a 20 percent disabled, and they call it a nervous disorder. We don't know. And for 10 years they gave me lithium. And I had side effects from the lithium to where I finally stopped . . . I don't know that the nervous disorder that I've been diagnosed with, I don't know if it's associated with stress, or with exposure to chemical or not. I know one thing, I know that I've had a tough time, physically. And I'm often at the VA hospital.

Interview Tr. & Notes at 1094.

In his Second Amended Complaint, Van Buskirk alleges that CNN defamed him "as being unreliable as a source . . . because he took drugs for ten years for a nervous disorder but stopped." *See* Second Amended Complaint ¶ 43. He further alleged that he was defamed by CNN

falsely and incompletely disclosing that he had been taking medication for a

nervous disorder for ten years and finally stopped ... [despite CNN's] knowing that he had not taken any medication for ten years that he had previously taken for a nervous disorder; and that in any event, the medication he had taken for the disorder was in no way mind-altering.

*Id.* at ¶ 48. The district court reviewed Van Buskirk's Second Amended Complaint, and with regard to this claim, the court decided that Van Buskirk had not stated a claim upon which relief could be granted because "Van Buskirk had not denied being on medication for many years."

The district court failed to appreciate the full nature of Van Buskirk's claim. It would appear that CNN, in its zeal to shift all blame for its own failure to adequately investigate the Tailwind story, sought to portray Van Buskirk as unreliable by any means available. CNN's statements that Van Buskirk "had been taking medication for a nervous disorder for ten years, though he finally stopped" were not accompanied by the additional facts that he had ceased taking medication more than ten years earlier and that the medication was not mind-altering.[7] *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (addressing the fact versus opinion distinction) ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact."). CNN also juxtaposed these statements with other statements in the retraction indicating that Van Buskirk was an unreliable source *at the time of his interviews with CNN. See Renwick v. News*

*and Observer Publishing Co.,* 63 N.C.App. 200, 304 S.E.2d 593, 600 (1983) (explaining that under North Carolina law the "intent and meaning of an alleged defamatory statement must be gathered not only from words singled out as libelous, but from the context in which they appear."), *rev'd on other grounds by Renwick v. News and Observer Publishing Co.,* 310 N.C. 312, 312 S.E.2d 405 (1984); *Tyson v. L'Eggs Products, Inc.,* 84 N.C.App. 1, 351 S.E.2d 834, 842 (1987) ("In determining whether a published article is libelous, it must be read and considered in its setting.") (citations omitted).

In the alternative, CNN's statements could have given the impression that Van Buskirk was mentally ill and required medication that he was no longer taking. In short, the statements (and omissions) about Van Buskirk's use of medication may have created a false impression that Van Buskirk's use of (or need for) medication was the cause of CNN's erroneous story on Operation Tailwind.

Statements, although perhaps "true" when viewed in isolation, may create an overall false impression when considered in context. *See Renwick,* 304 S.E.2d at 600; *Tyson,* 351 S.E.2d at 842. *See also Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 115 (Tex.2000) (applying Texas law) ("[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way."); *Dixson v. Newsweek, Inc.,* 562 F.2d 626, 631 (10th Cir.1977) ("A publisher may not escape liability for defamation when it takes words out of context and uses them to convey a false represen-

---

**7.** The record, although not well-developed, indicates that CNN does not dispute that it was aware that Van Buskirk had stopped taking medication ten years before the Operation Tailwind reports aired and that such medication was not mind-altering.

tation of fact."); *Crane v. The Arizona Republic*, 972 F.2d 1511, 1522 (9th Cir. 1992) (applying the "fair and true" reporter's privilege under California law) (although individual statements were true, their juxtaposition conveyed the false impression that one of two officials was lying).

Van Buskirk alleges in his complaint that CNN acted maliciously and deliberately disregarded the truth by not fully disclosing the facts surrounding Van Buskirk's usage of medication.[8] This contention is sufficient to state a claim for relief under Rule 12(b)(6). We determine that the question of whether Van Buskirk was defamed by CNN's comments regarding his taking medication for a nervous disorder merits further development. We remand this issue to the district court for further proceedings.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in part and **REVERSED** and **REMANDED** in part. Each party to bear its own costs.

---

8. We note that it is not clear what the parties, or for that matter the district court, assume Van Buskirk's status to be for purposes of invoking the constitutional malice standard. In any event, he certainly falls within the category of a private individual suing a media defendant for speech about a matter of public concern, and does at least have "the burden of showing falsity, as well as fault, before recovering damages." *Milkovich*, 497 U.S. at 15–16, 110 S.Ct. 2695 (quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)). On remand, this matter should be resolved.