John S. LUNA, Plaintiff,

v.

KEMIRA SPECIALTY, INC., a New Jersey corporation, formerly known as Tri–K Industries, Inc.; and Does 1 through 10, inclusive, Defendants.

Case No. CV 08–04908 MMM (JCx).

United States District Court, C.D. California.

Sept. 11, 2008.

Brandon Charles Murphy, James G. Morris, Le'Roy T. Roberson, Morris and Associates, Sherman Oaks, CA, for Plaintiff.

Edmund G. Farrell, III, Friedrich W. Seitz, Murchison and Cumming LLP, Los Angeles, CA, Peter J. Pizzi, Connell Foley LLP, Roseland, NJ, for Defendant.

1. Complaint at 1.

2. *Id.,* ¶ 1.

3. *Id.,* ¶ 2; Notice of Removal, ¶ 5.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING DEFENDANT'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

On June 11, 2008, John S. Luna commenced an action in Los Angeles Superior Court against Kemira Speciality, Inc. ("Kemira"), formerly known as Tri–K Industries, Inc., and certain fictitious defendants. On July 25, 2008, Kemira removed the action to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332. It filed a motion to stay the case pursuant to 9 U.S.C. § 3, or alternatively, to dismiss, or transfer venue pursuant to 28 U.S.C. § 1404 on August 1. On August 6, 2008, plaintiff filed a motion to remand to state court. This order addresses both of the pending motions.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. Plaintiff's Complaint

John S. Luna filed this action in Los Angeles Superior Court on June 11, 2008.[1] Luna is a California resident living in Palmdale, California.[2] Kemira Speciality, Inc., formerly known as Tri–K Industries, Inc., is incorporated in and has its principal place of business in New Jersey.[3] Kemira manufactures and distributes chemicals and other ingredients used to make cosmetics.[4] Luna was employed by Kemira for 26 years as a commissioned sales representative; his last position with the company was Vice President of West Coast Sales.[5]

4. Declaration of Peter J. Pizzi ("Pizzi Decl."), Exh. 1 (New Jersey Complaint, ¶ 1).

5. New Jersey Complaint, ¶¶ 10–11.

The parties' dispute arises out of Luna's employment agreement with Kemira. On March 18, 2005, Tri–K Industries, Inc. entered into a third amended employment agreement with Luna that contained non-solicitation and non-competition clauses.[6] The non-competition clause limits Luna's ability to compete with Kemira in order to protect the company's confidential information, trade secrets, customer relations, and overall business prospects.[7] The contract also contains an arbitration clause, which mandates arbitration of all employment-related disputes "before a single arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association."[8] The agreement states that the site of any arbitration shall be within Bergen or Essex counties in the state of New Jersey.[9]

On May 27, 2008, Luna resigned from his employment with Kemira.[10] Kemira's representative advised Luna that the company would enforce the one-year non-competition agreement upon Luna's termination.[11] Luna filed this action soon after, asserting that the clause violated California Business and Profession Code § 16600 and constituted an unfair business practice.[12] Luna's complaint seeks an injunction under California Business and Profession Code § 17203(1) preventing enforcement of the covenant not to compete; (2) preventing Kemira from placing similar covenants not to compete

in future employment agreements with California employees or persons doing business in California; and (3) prohibiting Kemira and its successors from taking legal action or compelling arbitration against Luna or any other California employee concerning provisions of the employment agreement that prohibit the employees from engaging in competitive activities in California.[13]

## B. The Notice of Removal

On July 25, 2008, Kemira removed the action to this court, contending that it fell within the court's diversity jurisdiction under 28 U.S.C. § 1332.[14] Although Luna seeks only injunctive relief, and has not stated a claim for monetary damages, Kemira asserted that the $75,000 amount in controversy requirement was satisfied because "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce."[15] See *In re Ford Motor Co./Citibank (South Dakota)*, 264 F.3d 952, 958 (9th Cir.2001) (citing *Ridder Bros. Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir.1944) (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action")); see also *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F.Supp. 925, 928 (N.D.Cal.1992) ("[I]n non-class action cases, the amount in controversy may be measured either by the

---

**6.** Complaint, ¶ 5, Exh. 1.

**7.** *Id.*, Exh. 1.

**8.** *Id.*

**9.** *Id.*

**10.** *Id.*, ¶ 6.

**11.** *Id.*

**12.** *Id.*, ¶ 8. Section 16600 states that "[e]xcept as provided in this chapter, every contract by

which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." CAL. BUS. & PROF.CODE § 16600.

**13.** Complaint, Prayer for Relief, ¶¶ 1–5.

**14.** Notice of Removal, ¶ 3.

**15.** *Id.*, ¶ 8.

value of the relief sought by the plaintiff or the cost to the defendant if the relief is granted" (citations omitted)).

### C. Pending Motions and Related Litigation

On August 1, 2008, Kemira filed a motion to stay under 9 U.S.C. § 3. Alternatively, it sought dismissal of the action under Rule 12(b)(6), or transfer of venue pursuant to 28 U.S.C. § 1404(a). Kemira represents that, in response to Luna's complaint, on June 30, 2008, it filed a petition in the United States District Court for the District of New Jersey to compel arbitration in accordance with the arbitration clause in the employment agreement.[16] On August 13, 2008, the district court in New Jersey issued an order compelling arbitration of "all claims asserted by the parties arising out of the non-compete and confidentiality provisions of John S. Luna's employment contract with Tri–K Industries, Inc., and/or Kemira Specialty, Inc."[17]

Approximately a week earlier, on August 6, Luna moved to remand this action to state court, arguing that Kemira has failed to show that the amount in controversy exceeds $75,000.

## II. DISCUSSION

### A. Plaintiff's Motion to Remand

#### 1. Standard Governing Removal to Federal Court Based on Diversity Jurisdiction

Unless expressly excepted by some other federal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have original diversity jurisdiction over civil actions between citizens of different states where the matter in controversy exceeds $75,000. *Id.,* § 1332(a). Remand is mandatory "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.,* § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (citing *Boggs v. Lewis,* 863 F.2d 662, 663 (9th Cir.1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 818 (9th Cir.1985)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman–Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990), and *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988)); *Befitel v. Global Horizons, Inc.,* 461 F.Supp.2d 1218, 1221 (D.Haw.2006) ("In diversity cases, the burden of proving all jurisdictional facts rests on the party seeking jurisdiction," citing *Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 857–58 (9th Cir.2001)). Where the complaint does not identify the amount of damages sought, the removing defendant has the burden of proving that the amount in controversy requirement is met. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir.1996) ("[W]e hold that in cases where a plaintiff's state court complaint

---

**16.** Notice of Motion and Memorandum of Defendant Kemira Specialty, Inc. in Support of its Motion for a Stay Pursuant to 9 U.S.C. § 3, to Dismiss, or to Transfer Venue Pursuant to 28 U.S.C. § 1404 ("Def.'s Mot. to Stay") at 2.

**17.** Plaintiff's Opposition to Motion for Stay, Dismissal or Transfer of Venue ("Pl.'s Stay Opp."), Exh. 1.

does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]"). If there is any doubt regarding the existence of federal jurisdiction, the court must resolve those doubts in favor of remanding the action to state court. *Gaus*, 980 F.2d at 566 ("[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979)); *Befitel*, 461 F.Supp.2d at 1221 ("Diversity jurisdiction is to be strictly construed and any doubts are to be resolved in favor of remand to the state court" (citations omitted)).

## 2. Whether Defendant Has Satisfied the Amount in Controversy Requirement

■ Where a lawsuit seeks declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *International Padi, Inc. v. Diverlink*, No. 03–56478, —— Fed.Appx. ——, ——, 2005 WL 1635347, *1 (9th Cir. July 13, 2005) (Unpub. Disp.) ("[I]n determining the amount in controversy, we may also include the value of the requested injunctive relief to either party" (citation omitted)); *In re Ford Motor Co./Citibank (South Dakota)*, 264 F.3d at 958 ("In *Sanchez*, we observed en banc that '*Ridder* ... rejected the "plaintiff-viewpoint" rule, which states that courts attempting to determine the value of a claim for purposes of the amount in controversy requirement should look only to the benefit to the plaintiff, rather than to the potential loss to the defendant,'" quoting *Sanchez*, 102 F.3d at 405 n. 6).

■ "The value of an injunction may not be capable of precise determination, but precision is not required." *Mailwaukee Mailing, Shipment and Equipment, Inc. v. Neopost, Inc.*, 259 F.Supp.2d 769, 772 (E.D.Wis.2003) (citing *Hedberg v. State Farm Mut. Auto. Ins. Co.*, 350 F.2d 924, 929 (8th Cir.1965) ("[A]lthough injury in an injunction suit may not be capable of exact valuation in money, this fact of itself does not negative federal jurisdiction"); 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3708 (3d ed. 1998); and *Miller–Bradford & Risberg, Inc. v. FMC Corp.*, 414 F.Supp. 1147, 1149 (E.D.Wis. 1976)).

■ Where a plaintiff seeks an injunction preventing the enforcement of a non-competition clause, "courts 'usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination'" to determine the amount in controversy. *Mahoney v. Depuy Orthopaedics, Inc.*, CIV F 07–1321 AWI SMS, 2007 WL 3341389, *4 (E.D.Cal. Nov. 8, 2007) (citing *Mailwaukee Mailing, Shipment & Equipment, Inc.*, 259 F.Supp.2d at 773; *Basicomputer Corp. v. Scott*, 791 F.Supp. 1280, 1286 (N.D.Ohio 1991); *Zimmer–Hatfield, Inc. v. Wolf*, 843 F.Supp. 1089, 1091 (S.D.W.Va.1994); and Wright, Miller & Cooper, *supra*, § 3708). "Courts have also examined the revenues generated by an employee and the revenues lost by the employer in determining whether the jurisdictional minimum has been met." *Id.* (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 510 (6th Cir.1992); *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444, 446–47 (5th Cir. 1971); *Robert Half Int'l, Inc. v. Van Steenis*, 784 F.Supp. 1263, 1265–66

(E.D.Mich.1991); *Basicomputer*, 791 F.Supp. at 1286; and *USAchem, Inc. v. Goldstein*, 512 F.2d 163, 170 (2d Cir.1975) (relying on "volume of sales involved")).

■ Like Luna, the plaintiff in *Mahoney v. Depuy Orthopaedics, Inc.* sought an injunction prohibiting enforcement of a covenant not to compete in an employment contract. *Mahoney*, 2007 WL 3341389 at *1–2. In support of its opposition to Mahoney's motion to remand, defendant submitted declarations stating that plaintiff had generated revenues and net profits well in excess of $75,000 per year. *Id.* at *2–3. Although defendant did not specify the exact amount of net profits generated by Mahoney, it asserted that he was responsible for more than $6 million in sales during an approximately eighteen-month period. *Id.* at *5. The court held defendant had satisfied the jurisdictional requirement, inferring that Mahoney's sales must have led generated more than $75,000 in net profits for defendant. *Id.*

Similarly, in *Davis v. Advanced Care Technologies, Inc.*, CIV S 06–02449 DFL DAD, 2007 WL 1302736 (E.D.Cal. May 2, 2007), plaintiff signed a confidentiality and non-competition agreement that prohibited him from revealing defendants' trade secrets or working for a competing company for two years after leaving defendants' employ. *Id.* at *1. Plaintiff sought a declaration that the noncompetition provisions of the contract were unenforceable under California law. *Id.* Upon removal of the action to federal court, plaintiff argued that the amount in controversy requirement had not been met; although conceding that defendants' trade secrets were worth more than $75,000, he asserted that

the nondisclosure provision did not implicate the noncompetition provision that was the subject of the action. *Id.* at *1–2. The court disagreed, determining that the nondisclosure and noncompetition provisions "work[ed] in concert to protect [defendant's] trade secrets—the nondisclosure provisions punitively, by creating a cause of action after a disclosure; the noncompetition provisions prophylactically, by creating a cause of action for conduct likely to lead to disclosure." *Id.* at *2. "Given the undisputed nature and scale of defendants' business," the court found, "the value of the trade secrets and other confidential information known to [plaintiff] surely exceeds $75,000."

Kemira has submitted the declaration of its president, Reno Del Dotto, who states that the value of Luna's employment to the company was greater than the $75,000 jurisdictional threshold. In 2007, Luna's sales for Kemira exceeded $6,000,000.[18] The total gross profit margin on the sales was $2,569,516, and the net profit margin, less overhead costs, was $1,944,688.[19] The overhead costs included Luna's compensation, comprised of a base salary of $324,000, commissions of $226,412, and expenses of $74,416, for a total of $624,828.[20] On January 21–23, 2008, Luna attended a sales meeting in New Jersey and gave a presentation setting forth his sales goals for 2008.[21] Luna projected that he would achieve $8,000,000 in sales this year, representing a $2,000,000 increase over what his total for 2007.[22]

As further evidence of Luna's value to the company, Del Dotto notes that on May 26, 2008, Luna sent a series of emails to different suppliers and customers, an-

---

18. Second Supplemental Declaration of Reno Del Dotto ("Supp. Del Dotto Decl."), ¶ 2.

19. *Id.*

20. *Id.*

21. *Id.*, ¶ 3.

22. *Id.*, ¶ 3, Exh. V.

nouncing that he was terminating his employment with Kemira.[23] As a result of these emails, one supplier, a Paris-based company, has given notice that it will be cancelling its contract with Kemira.[24] Another supplier located on the West Coast indicated that it would cancel its contract effective December 31, 2008.[25] It has since taken a "wait-and-see" approach to continuing business with Kemira at the end of the year.[26] If Luna were to solicit this supplier's business during the one-year non-competition period, Kemira represents that it would lose approximately $900,000 in sales, representing at least 25% in net profits to the company.[27] As Kemira notes, these figures demonstrate that, at least from its perspective, the amount in controversy exceeds $75,000.[28]

Luna does not dispute Kemira's arguments regarding the value of his services, but attempts instead to distinguish his case from *Mahoney*.[29] Luna notes that in *Mahoney*, plaintiff was actively competing with his former employer at the time the action was filed, in contravention of the covenant not to compete.[30] See *Mahoney*, 2007 WL 3341389 at *1 ("Mahoney wishes to explore other opportunities within his profession, and apparently is now employed or represents a competitor of DePuy. However, DePuy continues to insist that the Agreement's non-compete provisions are valid and remain in effect for one year after the Agreement's termination"). Luna, maintains that he, by contrast, is not presently pursuing business activities out of concern that he may "inadvertently violate" the terms of the employment agreement's non-competition clause.[31] He argues that because he is not presently competing against it, Kemira's claims regarding the amount of harm that will result from his prayer for injunctive relief— i.e., the amount in controversy—is purely speculative.[32]

Luna's arguments are unpersuasive. The *Mahoney* court did not deny the motion to remand based on evidence of actual damage resulting from plaintiff's alleged violation of the non-competition clause. Rather, it based its holding on plaintiff's prior sales and compensation. See *Mahoney*, 2007 WL 3341389 at *5–6 ("The Coffaro and Rems declarations show that Mahoney generated over $6 million in sales revenues from January 2006 to August 2007, and that Mahoney generated profits in excess of $75,000 per year for DePuy in 2006 and 2007. This evidence sufficiently shows that it is more likely than not that the amount in controversy exceeds $75,000"); cf. also *Davis Tune, Inc. v. Precision Franchising, LLC*, CV 05–97 RV, 2005 WL 1204618, *2 (N.D.Fla. May 20, 2005) ("The Plaintiff is seeking equitable relief which, if granted, would bar Precision Franchising from enforcing certain covenants not to compete against Davis Tune. These covenants restrict Davis Tune from operating an automotive center in

---

23. *Id.*, ¶ 7, Exh. X.

24. *Id.*, ¶ 8.

25. *Id.*, ¶ 10.

26. *Id.*

27. *Id.*, ¶ 11.

28. Defendant's Memorandum of Points and Authorities in Opposition to Motion to Remand ("Def.'s Opp. to Remand") at 11.

29. Plaintiff's Notice and Motion to Remand ("Pl.'s Remand Mot.") at 3–5.

30. *Id.* at 4.

31. Declaration of John Luna ("Luna Decl."), ¶¶ 6–7.

32. Pl.'s Remand Mot. at 4–10.

competition with Precision Franchising for the remaining three years of the agreement and for two years thereafter within a given distance of franchise locations. Since Davis Tune has reported annual sales of $440,000 from its automotive center, the practical gain by Davis Tune from winning a declaratory judgment in this case could be about $2,000,000 dollars. Even a small fraction of this would alone be sufficient to meet the $75,000 amount in controversy requirement").

Furthermore, it is clear from the text of the complaint that Luna seeks to enjoin enforcement of the non-competition clause so that he may compete with Kemira in the near future. The complaint alleges that "[a]s a result of the threat of Defendant stating that it will seek to enforce and [that it] intends to enforce the terms of the Employment Agreement concerning the covenant not to compete clause, Plaintiff upon his resignation will be harmed *by being required to comply with the covenant not to compete clause and not pursue business opportunities that he would otherwise pursue* due to concerns that it would subject him to being sued." [33] In his declaration, Luna states that he wants to sell "ingredients and products which Kemira does not currently handle" in the next twelve months.[34] The fact that the products he will offer for sale may be different from Kemira's does not demonstrate that they will not be competitive.[35]

Because Kemira has shown that Luna's sales activities resulted in more than $75,000 in net profits to the company during the year prior to his resignation, and because Luna indicated in a presentation that he would generate $8,000,000 in sales for 2008, the court concludes that Kemira has satisfied the amount in controversy

requirement for diversity jurisdiction. Accordingly, the court denies Luna's motion to remand.

## B. Defendant's Motion to Stay, Dismiss, or Transfer

### 1. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Under Rule 12(b)(6), a "complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002) (citing *Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir.1994)). See also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989).

In deciding whether a Rule 12(b)(6) motion meets this standard, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk*, 284 F.3d at 980; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dep't of Professional Regulation*, 300 F.3d 750, 754 (7th Cir.2002) (applying the " 'well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations,' " citing *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449,

---

**33.** Complaint, ¶ 8 (emphasis added).

**34.** Luna Decl., ¶ 6.

**35.** See Def.'s Opp. to Remand at 18.

454 (7th Cir.1998) (emphasis deleted)); *Woods v. Asset Resources*, CV 06–398 SMS, 2006 WL 3782704, *2 (E.D.Cal. Dec. 21, 2006) ("When a written instrument or subject of judicial notice contradicts allegations in a complaint to which it is attached, the Court need not accept the allegations of the complaint as true," citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)); *Saunders v. Knight*, CV 04–5924 REC LJO, 2006 WL 224426, *3 (E.D.Cal. Jan. 25, 2006) (citing *Thompson*).

The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). It need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

■■■■ Where a complaint and the attached exhibits demonstrate that all of plaintiff's claims are subject to arbitration, a court may dismiss the complaint under Rule 12(b)(6). *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir.2004); *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir.2000). Indeed, even where a party moves to stay litigation pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 3, the district court has discretion to dismiss the complaint if it finds all of the claims before it are arbitrable. See *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

### 2. Whether Plaintiff's Claims are Subject to Arbitration

■■■■ Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)). Whether an arbitration provision, as opposed to the underlying contract, is enforceable is a question for the court. *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001); *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir.1989).

■■■■ Arbitration is a matter of contract, and a party cannot be required to submit any dispute to arbitration that he has not agreed to submit. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In determining whether an arbitration clause is valid, the court "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir.2002) (quoting *First Options of Chicago, Inc. v.*

*Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Once an arbitration clause is determined to be valid, the FAA requires that "any doubts concerning the scope of arbitrable issues ... be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1131 (9th Cir.2000).

■ In enacting the FAA, Congress "declared a national policy favoring arbitration" intended to reverse centuries of judicial hostility to arbitration agreements. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, although courts follow common law rules of contract interpretation in construing arbitration agreements, see *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927, and the courts must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

Here, the contractual agreement between the parties provides that

"[t]he parties ... unmistakably and voluntarily agree that all employment-related disputes ... are to be submitted to arbitration before a single arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association."[36]

As noted, the district court for the District of New Jersey has ordered that "all claims asserted by the parties arising out of the non-compete and confidentiality provisions of John S. Luna's employment contract with Tri–K Industries, Inc., and/or Kemira Specialty, Inc., shall be pursued exclusively in the arbitration commenced by [Kemira] before a single arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association."[37]

Luna contends that he believed his action was properly brought in a California court instead of before an arbitrator because he sought not only to enjoin enforcement of the non-competition clause, but also, on behalf of current and future Kemira employees in California, to prohibit the company from engaging in unfair business practices.[38] Luna acknowledges, however, that the New Jersey court "compel[led] the California action into arbitration."[39] He therefore does not appear to dispute that all claims regarding the validity and enforceability of the non-competition clause are subject to arbitration.[40]

### 3. Whether the Court Should Dismiss or Stay the Action

■ Luna argues that the court should stay rather than dismiss the action so that any potential arbitration award can be confirmed by a court located in California.[41] He acknowledges that "the court [has] discretion to dismiss or transfer," but argues that it should not exercise that discretion since any arbitration award entered will concern California and should be confirmed by a California court. Specifically, he asserts that "[i]f the arbitrator grants an injunction concerning Kemira's use of

36. Complaint, Exh. 1.

37. Pl.'s Stay Opp., Exh. 1.

38. *Id.* at 2.

39. *Id.*

40. See *id.*

41. *Id.* at 2–3.

unfair competition clauses within California, the most appropriate court to issue injunctive relief is the present court." [42]

Section 3 of the Federal Arbitration Act provides that, "upon being satisfied that the issue involved in [a] suit ... is referable to arbitration ..., [a court] shall on application of one of the parties stay the trial of the action until such arbitration has been had ..., providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Ninth Circuit has held, however, that § 3 does not impose a mandatory duty to stay on district courts. Thus, even where a party seeks a stay under § 3, the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are arbitrable. See *Sparling,* 864 F.2d at 638; see also *Think-et Ink Information Resources,* 368 F.3d at 1060 (affirming dismissal under Rule 12(b)(6) of claims that were subject to arbitration); *Chappel,* 232 F.3d at 725 (where "judicial review ... is barred by the [contract's] valid and enforceable arbitration clause[,] [t]he district court properly dismissed his complaint under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim"); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 726 (9th Cir. 1999) (affirming dismissal under Rule 12(b)(6) of claims that were subject to an arbitration clause); *Martin Marietta Aluminum, Inc. v. General Electric Co.,* 586 F.2d 143, 148 (9th Cir.1978) (holding that a judge has discretion to grant summary judgment where all of plaintiff's claims are barred by an arbitration clause); cf. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) (noting that although 9 U.S.C. § 3 provides for a stay pending completion of arbitration, "[t]his rule ... was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.... [The court does] not believe the proper course of action is to stay the action pending arbitration. Given [the court's] ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose").

Here, the New Jersey court has determined that all claims arising out of the non-competition clause are arbitrable, and ordered them to be resolved exclusively in arbitration. Luna concedes that the claims are arbitrable.[43] In light of the fact that Luna's claims regarding the enforceability of the covenant not to compete are proceeding in arbitration in New Jersey, the court sees no utility in retain-

---

42. *Id.* at 3.

43. Pl.'s Stay Opp. at 2, Exh. 1. In construing the scope of an arbitration clause, the court "must ascertain and implement the reasonable expectations of the parties...." *Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 28 (2d Cir.1996). "Despite the presumption of arbitrability, the strong federal policy favoring arbitration may not extend the reach of arbitration beyond the intended scope of the clause providing for it." *Id.* "[C]ontracting parties control their own fate when it comes to deciding which disputes to consign to arbitration. On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general—even vague—language in their arbitration provisions." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir. 1993). Here, the arbitration clause to which the parties agreed is broad; it applies to any and all "employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law." (Complaint, Exh. 1.) Such employment-related disputes include claims, demands or actions arising under various federal and state statutes including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and

ing jurisdiction for the sole purpose of confirming an arbitration award in the event Luna obtains the relief he seeks. This is particularly true since the district court in New Jersey has retained jurisdiction over the case "including, without limitation, for the purpose of: (i) entering any application [Kemira] may file for a temporary restraining order or preliminary injunction; (ii) entertaining any motion to confirm the award of the arbitration panel; and (iii) granting such other and further relief as the Court may deem proper." [44] Because the New Jersey court is prepared to confirm any arbitration award entered on Luna's behalf, the court declines to stay the matter pending arbitration. It therefore exercises its discretion to dismiss the complaint without prejudice under Rule 12(b)(6).

### III. CONCLUSION

For the reasons stated, the court denies Luna's motion to remand. Given that the

parties are already pursuing their respective claims in arbitration in New Jersey, the court grants Kemira's motion to dismiss plaintiff's complaint under Rule 12(b)(6).

Mecial Leave Act, and the New Jersey Prevailing Wage Act. (*Id.*) The arbitration clause also applies to "any other federal, state, or local statute, regulation, or common law doctrine regarding employment discrimination, *conditions of employment, or termination of employment.*" (*Id.*) The clause states "[t]he parties ... understand that the remedies available to the Employee and the Corporation during the arbitration proceeding shall b[e] the same as the remedies available under the statute(s) upon which any claim(s) is based, and that could be awarded by any court or administrative agency." (*Id.*)

Consistent with the strong federal policy in favor of arbitration, *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir.1995), the existence of a broad agreement to arbitrate creates a presumption of arbitrability, which is overcome only if " 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997) (quoting *Associated Brick Mason Contractors of Greater New York,*

*Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir. 1987)). That is not the case here.

One of Luna's claims against Kemira is contractual, in that he seeks an injunction preventing Kemira from enforcing the non-competition clause in his employment agreement. The other is "employment-related," as Luna sues on behalf of other California employees of Kemira to prevent the company from including non-competition clauses in their contracts. He also seeks to enjoin the company's enforcement of non-competition clauses against any California employee. (*Id.,* Prayer for Relief, ¶¶ 1–5.) The fact that he seeks such relief on his own behalf as well as on behalf of similarly situated employees demonstrates that the claim is "employment-related." Indeed, under current California law, Luna cannot assert such a claim unless he "has suffered injury in fact and has lost money or property as a result of unfair competition." CAL. BUS. & PROF.CODE § 17204; see also *Californians For Disability Rights v. Mervyn's, LLC,* 39 Cal.4th 223, 228, 46 Cal. Rptr.3d 57, 138 P.3d 207 (2006).

**44.** *Id.,* Exh. 1.